**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

─────────────────────────────

**EDWARD LILLY,**

                         **Plaintiff,**                    **16-CV-242V(Sr)**

**v.**

**BRANDON M. HALL,**
**CHRISTOPHER P. SALADA,**
**LEWISTON POLICE DEPARTMENT, and**
**TOWN OF LEWISTON,**

                         **Defendants.**

─────────────────────────────

<u>**REPORT, RECOMMENDATION AND ORDER**</u>

        This case was referred to the undersigned by the Hon. Lawrence J. Vilardo, pursuant to 28 U.S.C. § 636(b)(1), for all pretrial matters and to hear and report upon dispositive motions.  Dkt. #15.


        Currently before the Court is defendants' motion for judgment on the pleadings.  Dkt. #14.  For the following reasons, it is recommended that defendants' motion be granted in part.


**FACTUAL BACKGROUND**

        On October 5, 2012, as plaintiff attempted to file a stolen drivers' license form at the Lewiston Police Department, Officer Hall asked plaintiff to provide proof of identity.  Dkt. #1, ¶ 19.  Plaintiff provided an expired drivers license, prompting Officer Hall to threaten to arrest Lilly for having two licenses. Dkt. #1, ¶ 19.  Plaintiff attempted to explain that New York State Trooper Cullen had confiscated his current license, but

Officer Hall "grappled to create another intimidating threat," causing plaintiff to exit the building.  Dkt. #1, ¶ 19.

In January of 2013, New York State Troopers Cullen and Campbell were featured in the Niagara Falls Reporter in a front page article headlined "Bullies with Badges."  Dkt. #1, ¶ 20.

On March 24, 2013, Officer Hall entered plaintiff's driveway as plaintiff was exiting his vehicle and yelled at plaintiff to "get back in the car."  Dkt. #1, ¶ 22. Plaintiff complied.  Dkt. #1, ¶ 22. Officer Hall yelled at plaintiff to roll down the window and produce his drivers license.  Dkt. #1, ¶ 22.  Plaintiff informed Officer Hall that he was the owner of the property and provided his name and address.  Dkt. #1, ¶ 22. Officer Hall reiterated his demand that plaintiff provide his drivers license or face arrest. Dkt. #1, ¶ 22.  Plaintiff inquired why Officer Hall was on his property and asked Officer Hall why he was threatening to arrest plaintiff.  Dkt. #1, ¶ 22.  Officer Hall did not respond to plaintiff's inquiries, but continued to threaten to arrest plaintiff.  Dkt. #1, ¶ 22. Plaintiff requested that Officer Hall call Chief Salada or any other supervisor, but Officer Hall refused.  Dkt. #1, ¶ 23.  Officer Hall advised plaintiff: "I know that Danny Cullen has pulled you over before."  Dkt. #1, ¶ 24.  Plaintiff called 911 to request supervision of his encounter with Officer Hall.  Dkt. #1, ¶ 26.  Lewiston Police Officer Grainge and New York State Trooper Ljujanich arrived at the scene and stood with Officer Hall.  Dkt. #1, ¶ 27.  The law enforcement officers "discussed how many and what types of tickets" they would issue to plaintiff, agreeing that "[w]e have to teach him not to put us in the newspaper anymore."  Dkt. #1, ¶ 28.  Plaintiff opines that:

> It was obvious that they were referring to the many articles that appeared in the Vanguard, Niagara Falls Reporter and the Niagara Gazette. Exposing headlines like "Loser Cop Loses in Court" and reference to police acting like Nazi's for knocking on Plaintiff Lilly's and other citizens doors, in the middle of the night, created vengeful motivation from some police officers.

Dkt. #1, ¶ 29. Sgt. Previte arrived on scene and sent Officer Grainge and Trooper Ljujanich on their way. Dkt. #1, ¶ 30. Officer Hall issued plaintiff an "equipment violation ticket" which was dismissed despite plaintiff's demand for a trial. Dkt. #1, ¶ 21.

Plaintiff "complained numerous times to Defendant Chief Salada about his officers retaliating against those who practiced their First Amendment Rights," but Chief Salada "took no action, and therefore gave tacit approval for his subordinates to continue violating citizen's rights." Dkt. #1, ¶ 33. Plaintiff also alleges that Chief Salada "allowed his officers to menace and retaliate against Lilly for distributing information fliers to citizens." Dkt. #1, ¶ 34.

On July 9, 2014, plaintiff alleges that the Town of Lewiston sent him a letter notifying him "that he is not allowed to contact the Town Hall or the Police." Dkt. #1, ¶ 36. He alleges that another letter, dated August 22, 2014, reminded plaintiff "that he is NOT entitled to town services other than 911 emergency." Dkt. #1, ¶ 37.

Plaintiff commenced this action, *pro se*, on March 23, 2016, asserting the following causes of action against all defendants: (1) deprivation of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1983; (2) deprivation of his First and Fourth Amendment rights pursuant to 42 U.S.C. § 1985; (3) deprivation of his First

Amendment rights; (4) deprivation of his Fourth Amendment rights; and (5) intentional infliction of emotional distress. Dkt. #1.  An internet article attached to the complaint from www.niagarafallsreporter.com/Stories/2013/Jan8/EdLilly.html recounts several incidents between New York State Trooper Campbell, plaintiff and plaintiff's mother-in-law, Joanne Smith, in November of 2007 and an incident on October 3, 2007 in which plaintiff alleges that Trooper Cullen "lost" his license and registration.  Dkt. #1, pp.15-17.  Another article from www.niagarafallsreporter.com/Stories/2013/Jan8/Cowboy StateTroopers.html begins:

> Apropos of the story on the previous page, where it is alleged that State Troopers Danny Cullen and Benjamin Campbell have been using their badges to intimidate Ed Lilly and his family, it is only fair to point out that this is not the first time these two have seemingly worked together to intimidate citizens.

Dkt. #1, p.12.  The article proceeds to describe allegations of harassment by Lenny Palumbo against New York State Troopers Cullen and Campbell.  Dkt. #1, pp.12-13. Mr. Palumbo is quoted as being accused by the New York State Troopers of "interviewing for articles that appeared in the Niagara Falls Reporter and creating anonymous fliers about Campbell that accused him of pointing guns at motorists at traffic stops."  Dkt. #1, p.13.  After his arrest on traffic charges, Mr. Palumbo reports that Trooper Campbell told him he would "be arrested again if 'me or my friends (referring to Ed Lilly) didn't stop the fliers."  Dkt. #1, p.13.  The article concludes that "it has become open season for anyone connected with the Smiths, Lilly or Palumbo, unless of course Lilly can bring some justice to what has now become a federal case."[1]  Dkt. #1, p.14.

---

[1] In addition to this case, plaintiff has filed complaints against New York State Trooper Campbell in 11-CV-540; the Town of Lewiston in 14-CV-1; and New York State Troopers Cullen and Campbell in 15-CV-874.

## DISCUSSION AND ANALYSIS

### Standard of Review

Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings."  Courts faced with motions under Rule 12(c) apply the same standard used to decide motions brought under Rule 12(b)(6).  *Patel v. Contemporary Classics of Beverly Hills*, 259 F.3d 123, 126 (2d Cir. 2001).

To survive a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), *quoting Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.  Application of this standard is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679.

### Lewiston Police Department

Defendants argue that the Lewiston Police Department is not a legal entity subject to suit.  Dkt. #14-5, p.23.

In accordance with Rule 17(b) of the Federal Rules of Civil Procedure, the capacity of the Lewiston Police Department to be sued is determined by New York law,

which provides that a police department is an administrative arm of the municipal corporation, which cannot be sued because it does not exist separate and apart from the municipality and does not have its own legal identity. *Baker v. Willett*, 42 F. Supp.2d 192, 198 (N.D.N.Y. 1999); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990). As a result, it is recommended that the Lewiston Police Department's motion for judgment on the pleadings be granted.

### Statute of Limitations

Defendants argue that any claim arising from the incident of October 5, 2012 and plaintiff's fifth cause of action for intentional infliction of emotional distress are barred by the statute of limitations. Dkt. #14-5, pp.10-11.

The statute of limitations for a common law claim of intentional infliction of emotional distress is one year. *Gardner v. St. Bonaventure Univ.*, 171 F. Supp.2d 118, 128 (W.D.N.Y. 2001). As plaintiff alleges no allegation against any defendant within one year of the filing of his complaint on March 23, 2016, it is recommended that his fifth cause of action for intentional infliction of emotional distress be dismissed with prejudice as barred by the statute of limitations.

The statute of limitations for actions brought pursuant to Sections 1983 and 1985 is three years. *Paige v. Police Dep't of the City of Schenectady*, 121 F. Supp.2d 723, 726 (N.D.N.Y. 2000), *aff'd* 264 F.3d 197 (2d Cir. 2001). Given that plaintiff filed his complaint on March 23, 2016, his allegations with respect to the incident on October 5, 2012 are barred by the statute of limitations.

**42 U.S.C. § 1983**

"The purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992). Section 1983 creates no substantive rights, however; it provides only a procedure for redress for the deprivation of rights established elsewhere. *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993), *cert. denied*, 512 U.S. 1240 (1994). To state a § 1983 claim, a plaintiff must allege: (1) the deprivation of a right, privilege or immunity secured by the Constitution and its laws by (2) a person acting under the color of state law. 42 U.S.C. § 1983.

**First Amendment Retaliation**

<u>Officer Hall</u>

Defendants argue that plaintiff has failed to plausibly allege his involvement in any of the publications set forth in the complaint or that defendants were aware of the articles. Dkt. #14-5, pp.12-13. Furthermore, defendants argue that plaintiff has failed to allege any actual injury as a result of the defendants' actions. Dkt. #14-5, pp.13-14.

Plaintiff responds that all of the articles cited in his complaint "were published based on my interview and the information I provided to the newspaper reporters, which was the cause of police retaliation." Dkt. #17, ¶ 3.

Defendants reply that plaintiff's response fails to plausibly allege that any of the defendants were aware of the articles or aware that plaintiff was the source of information for such articles.  Dkt. #18, p.5.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury."  *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013).  The third element can be satisfied by alleging "*either* that plaintiff's speech has been adversely affected by the government retaliation or that he has suffered some other concrete harm." *Id.*  "Where a party can show no change in his behavior, he has quite plainly shown no chilling of his First Amendment right to free speech." *Curley v. Village of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001).

"The First Amendment guarantees all persons freedom to express their views." *X-Men Sec., Inc. v. Pataki*, 196 F.3d 56, 68-69 (2d Cir. 1999).  More specifically, "the First Amendment protects a significant amount of verbal criticism and challenge directed at police officers." *City of Houston, Texas v. Hill*, 482 U.S. 451, 461 (1987).  Thus, plaintiff's complaints about New York State Troopers to the Niagara Falls Reporter and/or the Niagara Gazette constitute protected speech.

As to the second element, the Court finds plaintiff's allegation that another New York State Trooper responded to the scene on March 24, 2013 and discussed with

Officer Hall the need to teach plaintiff "not to put us in the newspaper anymore," as well as Officer Hall's alleged statement of knowledge that plaintiff was previously pulled over by New York State Trooper Cullen, who the Niagara Falls Reporter recently reported had intimidated plaintiff and "lost" plaintiff's license and registration, combined with plaintiff's allegation that he had previously informed Officer Hall that Trooper Cullen had confiscated his license, sufficient to plausibly allege knowledge by Officer Hall of plaintiff's involvement in the publication of news articles complaining about New York State Trooper Cullen.  Moreover, the temporal proximity of the publication of these articles and the issuance of the equipment violation ticket is sufficiently close to establish, for purposes of this motion, that the issuance of the ticket was motivated by plaintiff's complaints about New York State Trooper Cullen.

Finally, the issuance of the equipment violation ticket is a concrete harm as required by the third element. *See Smith v. Campbell*, 782 F.3d 93, 99.n.4 & 100 (2d Cir. 2015) (assuming without deciding that a retaliatory prosecution claim may arise from the issuance of traffic tickets in New York and stating that the "issuance of the tickets was an injury in that it subjected her to a state action requiring that she either appear in court, pay a fine, or both.").  Accordingly, it is recommended that the first cause of action, alleging retaliation in violation of plaintiff's first amendment rights, proceed against Lewiston Police Officer Brendon Hall.

Chief Salada

Defendants argue that plaintiff has failed to plausibly allege any causally-related retaliation by Lewiston Police Chief Salada.  Dkt. #14-5, pp.13-14.

"Supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003). Thus, liability cannot be based solely on the defendant's supervisory capacity or the fact that he held the highest position of authority within the relevant governmental agency or department. *Houghton v. Cardone*, 295 F. Supp.2d 268, 276 (W.D.N.Y. 2003). Rather, plaintiff must allege sufficient facts to plausibly allege that: (1) the defendant participated directly in the alleged constitutional violation; (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong; (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom; (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts; or (5) the defendant exhibited deliberate indifference to others' rights by failing to act on information indicating that unconstitutional acts were occurring. *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). Conclusory assertions of the personal involvement of a supervisory official in the deprivation of constitutional rights, without supporting factual allegations are insufficient. *Nielson v. City of Rochester*, 58 F. Supp.3d 268, 274 (W.D.N.Y. 2014).

In the instant case, plaintiff's allegation of "numerous" complaints to Chief Salada about Lewiston Police Officers retaliating against unnamed individuals practicing their First Amendment rights is too vague and conclusory to plausibly allege Chief Salada's personal involvement in the deprivation of plaintiff's constitutional rights on March 24, 2013. Accordingly, it is recommended that Christopher Salada be dismissed from this action.

-10-

<u>Town of Lewiston - Respondeat Superior</u>

Defendants argue that a municipality cannot be held liable pursuant to 42 U.S.C. § 1983 under the doctrine of *respondeat superior*.  Dkt. #14-5, p.23.

A municipality cannot be held vicariously liable under § 1983 for the constitutional torts of its employees, nor can it be subject to liability pursuant to a theory of *respondeat superior*, but is only liable when it can be fairly said that the municipality itself is the wrongdoer.  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992); *Canton v. Harris*, 489 U.S. 378, 385 (1989).  Accordingly, it is recommended that plaintiff's sixth cause of action, which seeks to hold the Town of Lewiston liable under the common law doctrine of *respondeat superior*, be dismissed.

<u>Town of Lewiston - Monell Claim</u>

Defendants argue that plaintiff has failed to allege that any of the violations alleged were caused by a municipal policy of the Town of Lewiston.  Dkt. #14-5, p.24.

Plaintiff responds that he attempted to complain about the violation of his constitutional rights, but was denied access to the Town of Lewiston government and that the letters sent to plaintiff evidence an additional violation of his constitutional rights, *to wit*, denial of future police protection.  Dkt. #17, ¶ 10. Plaintiff also responds that a jury could find that the Lewiston Police Department's policy, procedure and practice provided tacit approval for officers to violate the constitutional rights of its citizens.  Dkt. #17, ¶ 11.

Defendants reply that the letters do not constitute a constitutional injury and, in any event, there is no allegation to link the letters to plaintiff's speech.  Dkt. #18, p.6.

A plaintiff seeking to impose liability on a municipality or other local government must allege that the constitutional deprivation was caused by "action pursuant to official municipal policy."  *Connick v. Thompson,* 563 U.S. 51, 60-61 (2011), *quoting Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law."  *Id.* at 61.  "[T]o  show a policy, custom, or practice for purposes of *Monell* a plaintiff may allege (1) the existence of a formal policy which is officially endorsed by the municipality; (2) actions taken or decisions made by municipal officials with final decision making authority, which caused the alleged violation of plaintiff's civil rights; (3) a practice so persistent and widespread that it constitutes a custom of which constructive knowledge can be implied on the part of policymaking officials; or (4) a failure by policy makers to properly train or supervise their subordinates, amounting to deliberate indifference to the rights of those who come in contact with municipal employees."  *Calicchio v. Sachem Cent. Sch. Dist.*, 185 F. Supp.3d 303, 315-16 (E.D.N.Y. 2016).  "[M]ere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details."  *Triano v. Town of Harrison*, 895 F. Supp.2d 526, 535 (S.D.N.Y. 2012).

In the instant case, plaintiff's allegations fail to plausibly allege the existence of a policy, custom or practice within the Lewiston Police Department which would cause Lewiston Police Officer Hall to issue plaintiff an equipment violation ticket in retaliation against plaintiff's criticism of New York State Troopers. Moreover, plaintiff has failed to plead sufficient facts to suggest that the Town of Lewiston has a policy of failing to adequately investigate complaints made against its police officers. *See Sanders v. City of New York*, 692 F. Supp. 308, 312 (S.D.N.Y. 1988) (dismissing vague and conclusory allegation that City of New York failed to adequately investigate complaints made against police officers). Finally, plaintiff has failed to allege a concrete harm caused by the July 9, 2014 and August 22, 2014 letters from the Town of Lewiston, which clearly did not chill his speech.  Accordingly, it is recommended that the Town of Lewiston be dismissed from this action.

**Fourth Amendment**

Defendants argue that Officer Hall's entry onto plaintiff's driveway cannot support a Fourth Amendment violation because plaintiff has no expectation of privacy in his driveway.  Dkt. #14-5, p.16.

Plaintiff responds that he "did not commit any crime, there was NO probable cause to engage plaintiff, as he was on his own private property, and on that day, plaintiff was denied his constitutional rights."  Dkt. #17, ¶ 9.

Defendants reply that Officer Hall's alleged entry onto plaintiff's driveway does not implicate the Fourth Amendment and that plaintiff has failed to allege that he

was seized within the meaning of the Fourth Amendment or that any such seizure lacked sufficient justification.  Dkt. #18, p.7.

"The Second Circuit has repeatedly held that no Fourth Amendment search occurs when a law enforcement officer enters a home's driveway, walkway, or similar area that is accessible to the general public."  *Rankel v. Town of Somers*, 999 F. Supp.2d 527, 548 (S.D.N.Y. 2014), *citing United States v. Reyes*, 283 F.3d 446, 465 (2d Cir.) ("[W]e have found no Fourth Amendment violation based on a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business."), cert. denied, 537 U.S. 822 (2002). Furthermore, the "Supreme Court has incontrovertibly and repeatedly held that a 'temporary and relatively nonthreatening detention involved in a traffic stop or *Terry* stop does not constitute . . . custody" so as to constitute a seizure under the Fourth Amendment.  *Nasca v. County of Suffolk*, 933 F. Supp.2d 437, 442 (E.D.N.Y. 2013), *quoting Howes v. Fields*, __ U.S. __, 132 S. Ct. 1181, 1190 (2012); *See also Burg v. Gosselin*, 591 F.3d 95, 98 (2d Cir. 2010) ("the issuance of a pre-arraignment, non-felony summons requiring a later court appearance, without further restrictions, does not constitute a Fourth Amendment seizure.").  As Officer Hall's entry onto plaintiff's driveway to issue plaintiff an equipment violation ticket does not support a Fourth Amendment violation, it is recommended that this cause of action be dismissed.

**42 U.S.C. § 1985**

Defendants argue that plaintiff has failed to allege the existence of a conspiracy or the discriminatory animus required for a claim pursuant to 42 U.S.C. § 1985(3).  Dkt. #14-5, pp.20-21.


To state a claim pursuant to 42 U.S.C. § 1985(3), "a plaintiff must allege a conspiracy 'motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'"  *Harrison v. Lutheran Med. Ctr.*, 468 Fed. Appx 33, 37 (2012), *quoting United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983). Conclusory allegations of a conspiracy are insufficient.  *Thomas v. Roach*, 165 F.3d 137, 147 (2d Cir. 1999).  Moreover, although the Supreme Court has yet to clarify what classification beyond race would satisfy the requirements for a § 1985(3) claim,

> the term unquestionably connotes something more than a group of individuals who share a desire to engage in conduct that the § 1985(3) defendant disfavors.  Otherwise, innumerable tort plaintiffs would be able to assert causes of action under § 1985(3) by simply defining the aggrieved class as those seeking to engage in the activity the defendant has interfered with. This definitional ploy would convert the statute into the "general federal tort law" it was the very purpose of the animus requirement to avoid.

*Town of West Hartford v. Operation Rescue*, 991 F.2d 1039, 1046 (2d Cir. 1993), *quoting Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971). Thus, a plaintiff claiming discrimination because of his political and philosophical opposition to defendants and outspoken criticism of the defendants' political and governmental attitudes and activities does not constitute a cognizable class under § 1985(3).  *Fotopolous v Board of Fire Comm'rs of the Hicksville Fire Dist.,* 11 F. Supp.3d 348, 369 (E.D.N.Y. 2014), *citing Gleason v. McBride*, 869 F.2d 688, 695 (2d Cir. 1989).

Plaintiff's complaint fails to allege any facts which would suggest either a conspiracy to violate plaintiff's civil rights or an actionable discriminatory animus motivating defendants' conduct.  Accordingly, it is recommended that plaintiff's second cause of action, alleging a violation of 42 U.S.C. § 1985, be dismissed.

## CONCLUSION

For the foregoing reasons, it is recommended that the defendants' motion for judgment on the pleadings (Dkt. #14), be granted except as to plaintiff's claim that Lewiston Police Officer Hall retaliated against plaintiff for plaintiff's exercise of his first amendment rights when he issued plaintiff an equipment violation ticket on March 24, 2013.

Therefore, it is hereby ORDERED pursuant to 28 U.S.C. § 636(b)(1) that:

This Report, Recommendation and Order be filed with the Clerk of the Court.

ANY OBJECTIONS to this Report, Recommendation and Order must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report, Recommendation and Order in accordance with the above statute, Fed.R.Civ.P. 72(b) and Local Rule 72(b).

The district judge will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not presented to the

magistrate judge in the first instance.  *See, e.g., Patterson-Leitch Co. v. Massachusetts Mun. Wholesale Electric Co.*, 840 F.2d 985 (1st Cir. 1988).

<u>Failure to file objections within the specified time or to request an extension of such time waives the right to appeal the District Court's Order</u>.  *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Wesolek v. Canadair Ltd.*, 838 F.2d 55 (2d Cir. 1988).

The parties are reminded that, pursuant to Rule 72(b) of the Local Rules for the Western District of New York, "written objections shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for such objection and shall be supported by legal authority."  <u>Failure to comply with the provisions of Rule 72(b) may result in the District Judge's refusal to consider the objection.</u>

The Clerk is hereby directed to send a copy of this Report, Recommendation and Order to the attorneys for the parties.

**SO ORDERED.**

**DATED:**      **Buffalo, New York**
               **January  17, 2018**

                                                       *s/ H. Kenneth Schroeder, Jr.*
                                              **H. KENNETH SCHROEDER, JR.**
                                              **United States Magistrate Judge**