UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

EDWARD LILLY,

    Plaintiff,

  v.           16-CV-242
              DECISION AND ORDER
BRANDON HALL, CRISTOPHER
SALADA, LEWISTON POLICE DEPT.,
TOWN OF LEWISTON,

    Defendants.

_____

    On March 23, 2016, the pro se plaintiff, Edward Lilly, commenced this action

under 42 U.S.C. §§ 1983 and 1985, raising a common law claim as well. Docket Item 1.

On October 20, 2016, this Court referred the case to United States Magistrate Judge H.

Kenneth Schroeder, Jr., for all proceedings under 28 U.S.C. § 636(b)(1)(A) and (B).

Docket Item 15. On October 13, 2016, the defendants moved for judgment on the

pleadings, Docket Item 14; on December 6, 2016, Lilly responded, Docket Item 17; and

on December 28, 2016, the defendants replied, Docket Item 18. On January 17, 2018,

Judge Schroeder issued a Report and Recommendation ("R&R") finding that the

defendants' motion should be granted in part and denied in part. Docket Item 19.

    The defendants objected to the R&R, arguing that Judge Schroeder should have

dismissed all the plaintiff's First Amendment claims. Docket Item 20. In the alternative,

the defendants objected to Judge Schroeder's failure to recommend that the plaintiff's

request for punitive damages be dismissed. *Id.* Lilly also objected to the R&R, arguing

that Judge Schroeder erred in dismissing his Fourth Amendment claims. Docket Item

23.  On March 14, 2018, the defendants responded to the plaintiff's objections, Docket Item 24, and on March 30, 2018, the plaintiff responded to the defendant's objections, Docket Item 26.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  A district court must conduct a de novo review of those portions of a magistrate judge's recommendation to which objection is made.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  This Court therefore reviews de novo all recommendations to which either party objected.  And in its discretion, this Court reviews de novo all other recommendations as well.

## BACKGROUND

On a motion to dismiss, the plaintiff's allegations are accepted as true and all reasonable inferences are drawn in the plaintiff's favor.  *See, e.g.*, *Sharkey v. Quarantillo*, 541 F.3d 75, 83 (2d Cir. 2008).  The allegations in Lilly's complaint are based on his several interactions with the Town of Lewiston and law enforcement officers from the Lewiston Police Department and the New York State Police.  A liberal reading of the complaint here tells the following story.

On October 5, 2012, Lilly attempted to file a stolen driver's license form at the Lewiston Police Department. Docket Item 1 at 3.  After defendant Officer Brandon Hall asked Lilly for proof of identity, Lilly provided an expired drivers license and Officer Hall threatened to arrest Lilly for having two licenses.  *Id.*  Lilly explained that he had only one license and that New York State Trooper Danny Cullen had taken his unexpired license.  *Id.*  Lilly left "[a]s Hall grappled to create another intimidating threat."  *Id.*

2

In January 2013, the Niagara Falls Reporter published a front page article titled "Bullies with Badges" that featured New York State Troopers Ben Campbell and Cullen. *Id.*

Lilly's next encounter with the police occurred on March 24, 2013, when Officer Hall entered Lilly's driveway as Lilly was exiting his vehicle and yelled for Lilly to "get back in the car." Docket Item 1 at 4. Lilly re-entered his vehicle as instructed, but Hall approached "yelling and screaming" and told Lilly to "roll down [his] window and hand over [his] drivers license." *Id.* Hall threatened to arrest Lilly, so Lilly asked Hall why he was on Lilly's property and threatening to arrest him. *Id.* Hall "simply continued to threaten to arrest Lilly." *Id.*

Lilly asked Hall to call defendant Police Chief Christopher Salada or any other supervisor, but Hall refused. *Id.* Lilly therefore called 911 to request supervision. *Id.*

Hall told Lilly, "I know that Danny Cullen has pulled you over before." *Id.* Then, Lewiston Police Officer Matthew Grainge and New York State Trooper Derek Ljiljanich arrived at the scene and, together with Hall, gave Lilly "the 'Show of Force' intimidation treatment." *Id.* The three officers stood next to Lilly's vehicle and "discussed how many and what types of tickets they would give to Lilly." *Id.* They agreed that "[w]e have to teach him not to put us in the newspaper anymore." *Id.* Sergeant Frank Previte later arrived and sent Officer Grainge and Trooper Ljiljanich away. Docket Item 1 at 5. Hall then issued Lilly an "equipment violation ticket" that was ultimately dismissed. Docket Item 1 at 4.

Lilly complained "numerous times" to Chief Salada about "his officers retaliating against those who practiced their First Amendment Rights," but Chief Salada did not do

anything. Docket Item 1 at 5. In fact, Salada "allowed his officers to menace and retaliate against Lilly for distributing informational fliers to citizens." *Id.*

Later on, the Town of Lewiston twice sent Lilly letters—once on July 9, 2014, and again on August 22, 2014—notifying him "that he is not allowed to contact the Town Hall or the Police" and "he is NOT entitled to town services other than 911 emergency." *Id.*

Lilly attached to his complaint internet articles from the Niagara Falls Reporter and the Niagara Gazette. Docket Item 1 at 12-19. The first, titled "Hearing to focus on state trooper's conduct," was published on May 4, 2010, in the Niagara Gazette and details allegations of misconduct against New York State Trooper Campbell by several people, including Joanne Smith, Lilly's mother-in-law. *Id.* at 18-19. Another article, titled "'Cowboy' State troopers run roughshod in Lewiston," was published on January 8, 2013, in the Niagara Falls Reporter and includes stories about New York State Troopers Campbell and Cullen harassing Leonard Palumbo and Lilly for distributing fliers about Trooper Campbell. *Id.* at 13. Another article, also published on January 8, 2013, in the Niagara Falls Reporter and titled "Citizen alleges trooper has crossed the line, files suit," describes Lilly's interactions with Trooper Campbell. *Id.* at 16. One of the articles concludes that "it has become open season for anyone connected with the Smiths, Lilly or Palumbo, unless of course Lilly can bring some justice to what has now become a federal case." *Id.* at 14.

Lilly commenced this action *pro se* on March 23, 2016, asserting the following claims against all defendants: deprivation of his First and Fourth Amendment rights under 42 U.S.C. § 1983; deprivation of his First and Fourth Amendment rights under 42

4

U.S.C. § 1985; deprivation of his First Amendment rights; deprivation of his Fourth

Amendment rights; and intentional infliction of emotional distress.  Docket Item 1.

## DISCUSSION

### I.  ALL CLAIMS AGAINST LEWISTON POLICE DEPARTMENT

Judge Schroeder recommended that the Lewiston Police Department's motion

for judgment on the pleadings be granted.  Docket Item 19 at 6.  The parties did not

object to this recommendation.  Fed. R. Civ. P. 17(b) provides that New York law

determines the capacity of the Lewiston Police Department to be sued.  Under New

York law, a police department is an administrative arm of its municipal corporation; as

such it cannot be sued because it does not exist separate and apart from the

municipality and does not have its own legal identity.  *See Baker v. Willett*, 42 F.

Supp.2d 192, 198 (N.D.N.Y. 1999); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606

(W.D.N.Y. 1990).  Therefore, and because the parties did not object to this

recommendation, this Court accepts Judge Schroeder's recommendation and grants

the Lewiston Police Department's motion for judgment on the pleadings.

### II.  SECTION 1983 CLAIMS

#### A.  Statute of Limitations

Judge Schroeder recommended that Lilly's action under 42 U.S.C. § 1983 with

respect to the incident on October 5, 2012, be dismissed.  The parties did not object to

this recommendation.  The statute of limitations for actions under § 1983 is three years.

*See Paige v. Police Dep't of the City of Schenectady*, 121 F. Supp.2d 723, 726

(N.D.N.Y. 2000), *aff'd* 264 F.3d 197 (2d Cir. 2001).  Because Lilly filed his complaint on

March 23, 2016, his allegations with respect to the incident on October 5, 2012, are barred by the statute of limitations. Therefore, and because the parties did not object to this recommendation, this Court accepts Judge Schroeder's recommendation and dismisses that claim.

### B.    First Amendment Retaliation Claim

#### 1.    Officer Hall

The defendants object to Judge Schroeder's recommendation that Lilly's First Amendment retaliation claim survive their motion to dismiss. They argue that Lilly failed to adequately plead a retaliation claim: first, because "the plaintiff failed to plausibly allege that he exercised a right protected by the First Amendment"; second, because "the plaintiff failed to plausibly allege that Officer Hall engaged in retaliation that was causally-related to his exercise of a First Amendment right"; and finally, because "the plaintiff did not plausibly allege that he suffered a qualifying injury as a result of the alleged retaliation." Docket Item 20 at 3-5. None of these objections is persuasive.

"To plead a First Amendment retaliation claim a plaintiff must show: (1) he has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by his exercise of that right; and (3) the defendant's actions caused him some injury." *Dorsett v. County of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged." *Id.* Furthermore, the Court must read *pro se* complaints liberally

and "interpret them to raise the strongest arguments that they suggest." *Pabon v.*

*Wright*, 459 F.3d 241, 248 (2d Cir. 2006).

Lilly has sufficiently alleged that he exercised his First Amendment right to free

speech. *See Dorsett*, 732 F.3d at 160. In response to the defendants' argument that

he did not plausibly allege his involvement in any of the publications to which the

complaint refers, Lilly notes that all the articles cited in his complaint "were published

based on [his] interview and the information [he] provided to the newspaper reporters."

Docket Item 17 at 2. The defendants reply that Lilly did not adequately allege the

speech element in his complaint and cannot cure the complaint's deficiency in his

affidavit opposing the defendant's motion to dismiss. Docket Item 20 at 3. But one of

the articles that Lilly attached to his complaint refers to Lilly directly; indeed, he is even

quoted. Docket Item 1 at 16. Because the court must interpret a pro se plaintiff's

complaint to raise the strongest arguments possible, *see Pabon*, 459 F.3d at 248, Lilly's

complaint plausibly alleges that he engaged in protected speech.

Lilly also has plausibly alleged the necessary causal relationship between his

speech and Officer Hall's alleged retaliation. *See Dorsett*, 732 F.3d at 160. First, he

asserted facts showing that Hall was aware of Lilly's protected speech. For example,

Hall allegedly said that New York State Trooper Cullen—who had been a subject of the

Niagara Falls Reporter article involving Lilly—had previously pulled Lilly over. *Id.* at 4.

Lilly also alleged that he had told Hall that Trooper Cullen had confiscated Lilly's

license, another subject of Lilly's protected speech. *Id.* Perhaps most importantly,

during the incident that Lilly claims was retaliation, Hall actually referred to Lilly's

protected speech when he discussed with fellow officers the need to teach Lilly "not to put us in the newspaper anymore." *Id.* And two of the newspaper articles to which these comments allegedly refer were published on January 8, 2013,[1] only a couple months before the March 24, 2013 encounter with Hall. Lilly's allegations about Hall's knowledge and statements during that incident, combined with its temporal proximity to the publication of the articles, suffice to plausibly plead that Lilly's First Amendment speech caused Hall's alleged retaliation. *See Iqbal*, 556 U.S. at 678.

Finally, this Court agrees with Judge Schroeder that Lilly has shown an injury sufficient for a First Amendment retaliation claim. *See Dorsett*, 732 F.3d at 160. Lilly alleges that Hall retaliated by issuing him an equipment violation ticket, and that ticket was dismissed in Lilly's favor when the district attorney refused to prosecute him. Docket Item 1 at 4-5. While the defendants are correct that the Second Circuit in *Smith v. Campbell*, 782 F.3d 93, 99 n.4 (2d Cir. 2015), only "assume[d] without deciding that a retaliatory prosecution claim may arise from the issuance of traffic tickets," that dicta persuasively suggests that the Second Circuit would find a traffic ticket in New York to be enough. Indeed, the equipment violation ticket here "subjected [Lilly] to a state action requiring that [he] either appear in court, pay a fine, or both." *Id.* Therefore, the ticket here is a sufficient injury to support a First Amendment retaliation claim.

For the reasons above and in the R&R, this Court accepts Judge Schroeder's recommendation not to dismiss the plaintiff's retaliation claim against defendant Hall.

---

[1] Another had been published May 4, 2010.

### 2. Chief Salada

Judge Schroeder recommended that Lilly's retaliation claim against defendant Chief Salada be dismissed.  The parties did not object to this recommendation.  "Supervisor liability in a § 1983 action depends on a showing of some personal responsibility, and cannot rest on *respondeat superior*."  *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003).  Conclusory assertions of the personal involvement of a supervisory official in a deprivation of constitutional rights, without supporting factual allegations, are insufficient.  *See Nielson v. City of Rochester*, 58 F. Supp.3d 268, 274 (W.D.N.Y. 2014).  Here, Lilly's allegation that "numerous" complaints were made to Chief Salada about retaliation against unnamed individuals is too vague and conclusory to plausibly allege Chief Salada's personal involvement in the deprivation of Lilly's constitutional rights.  Therefore, and because the parties did not object to this recommendation, this Court accepts Judge Schroeder's recommendation and dismisses Lilly's claims against Chief Salada.

### 3. Town of Lewiston

Judge Schroeder recommended that Lilly's claims against the Town of Lewiston be dismissed.  The parties did not object to this recommendation.

First, a municipality cannot be held vicariously liable under § 1983 for the constitutional torts of its employees, nor can it be liable under a theory of *respondeat superior*.  A municipality is liable only when it can be fairly said that the municipality itself is the wrongdoer.  *See Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992).  Therefore Lilly's cause of action based on the common law doctrine of *respondeat superior* lacks merit.

Second, a plaintiff seeking to impose liability directly on a municipality or other local government must allege that the constitutional deprivation was caused by "action pursuant to official municipal policy." *Connick v. Thompson*, 563 U.S. 51, 60-61 (2011), *quoting Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Id.* at 61. On the other hand, "mere allegations of a municipal custom or practice of tolerating official misconduct are insufficient to demonstrate the existence of such a custom unless supported by factual details." *Triano v. Town of Harrison*, 895 F. Supp.2d 526, 535 (S.D.N.Y. 2012).

Here, Lilly has not plausibly alleged the existence of any policy, custom, or practice that resulted in Hall's issuing an equipment violation ticket in retaliation for Lilly's criticism of New York State troopers. Likewise, Lilly has not pleaded facts sufficient to suggest that the Town of Lewiston has a policy of failing to adequately investigate complaints made against its police officers. *See Sanders v. City of New York*, 692 F. Supp. 308, 312 (S.D.N.Y. 1988) (dismissing vague and conclusory allegation that City of New York failed to adequately investigate complaints made against police officers). Therefore, and because the parties did not object to this recommendation, this Court accepts Judge Schroeder's recommendation and dismisses Lilly's claims against the Town of Lewiston.

### 4.    Punitive Damages

The defendants also object to Judge Schroeder's failure to address Lilly's claim for punitive damages. Docket Item 20 at 6; *cf. Snipes v. Tilton*, 2011 WL 766599, at *3

(S.D. Cal. 2011) ("An objection to the R&R would identify something wrong with the R&R, either something in the R&R that should be different, or something omitted from the R&R that should have been included."). The defendants argue that the complaint does not include factual allegations sufficient to sustain any award of punitive damages. Docket Item 20 at 6. This Court disagrees.

Punitive damages are available in § 1983 cases if the defendants have engaged in conduct that is outrageous, such as conduct involving willful, wanton, or reckless indifference to the rights of others. *See, e.g.*, *Exxon Shipping Co. v. Baker*, 554 U.S. 471 (2008); *Media Alliance, Inc. v. Mirch*, 2010 WL 2557450, at *5 (N.D.N.Y. June 24, 2010) (finding amendment to § 1983 complaint seeking damages was plausible). Here, Lilly has alleged conduct in connection with his First Amendment retaliation claim that, if taken as true, demonstrates willful and wanton disregard for his rights. Therefore, his claims for punitive damages against the remaining defendant will not be dismissed.[2]

## C.    Fourth Amendment Claim for Entering a Driveway

Judge Schroeder recommended that Lilly's Fourth Amendment claim be dismissed because that claim rests on Officer Hall's alleged entry on Lilly's driveway and the Fourth Amendment provides no protection in a driveway. Lilly objects and cites *United States v. Reyes,* 283 F.3d 446, 465 (2d Cir. 2002), for the proposition that the

---

[2] The defendants are correct that punitive damages are not recoverable against a municipality in a claim brought under § 1983. *See City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247 (1981). Therefore, the claim for punitive damages against the Town of Lewiston and the Lewiston Police Department must be dismissed. But because the claims against these defendants have been dismissed for other reasons, *see supra*, that is a moot point.

Fourth Amendment does not protect a driveway only when a law enforcement officer is there "in pursuit of legitimate law enforcement business."[3]  *Reyes*, 283 F.3d at 465.

"[I]t is well settled under Supreme Court and Second Circuit precedent that the officer's entry onto the driveway for a police purpose (such as the issuance of a summons) does not implicate any Fourth Amendment rights of the plaintiff."  *Nasca v. Cty. of Suffolk*, 2008 WL 53247 at *4 (E.D.N.Y. 2008).  The Second Circuit held in *Reyes* that there is "no Fourth Amendment violation based on a law enforcement officer's presence on an individual's driveway when that officer was in pursuit of legitimate law enforcement business."  283 F.3d at 465 (citing *Krause v. Penny*, 837 F.2d 595, 597 (2d Cir. 1988) ("areas such as driveways that are readily accessible to visitors are not entitled to the same degree of Fourth Amendment protection as are the interiors of defendants' houses.")).  Here, Lilly alleges that the police officer defendants issued him a ticket after entering his driveway.  Docket Items 1 at 5; 8 at 4.  That is precisely the sort of police purpose for which officers may enter areas reasonably accessible to visitors without implicating the Fourth Amendment.  And it is the issuance of the ticket—not the entry on his driveway—that allegedly injured Lilly and about which he complains.

For these reasons and those stated in the R&R, this Court accepts Judge Schroeder's recommendation and dismisses the plaintiff's Fourth Amendment claims.

---

[3] In essence, Lilly asks this Court to be the first to place controlling weight on the word "legitimate" in the Second Circuit's limiting clause in *Reyes*.  But he offers nothing more than the quotation in support of his objection.

12

## III.  SECTION 1985 CLAIMS

### A. Statute of Limitations

Judge Schroeder recommended that Lilly's § 1985 claims arising out of the

incident on October 5, 2012, be dismissed.  Docket Item 19 at 6.  The parties did not

object to this recommendation.  The statute of limitations for actions brought under

§ 1985 is three years.  *See Paige*, 121 F. Supp. 2d at 726.  The plaintiff filed his

complaint on March 23, 2016, well over three years after the incident at issue.

Accordingly, and because the parties did not object to this recommendation, this Court

accepts Judge Schroeder's recommendation and dismisses Lilly's § 1985 claims arising

from the incident on October 5, 2012.

### B.    Other Claims

Judge Schroeder also recommended that Lilly's timely claims under § 1985 be

dismissed.  Docket Item 19 at 15.  The parties did not object to this recommendation.

To state a claim under 42 U.S.C. § 1985(3), "a plaintiff must allege a conspiracy

'motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory

animus.'"  *Harrison v. Lutheran Med. Ctr.*, 468 Fed. Appx 33, 37 (2d Cir. 2012) (quoting

*United Bhd. of Carpenters v. Scott*, 463 U.S. 825, 828-29 (1983)).  A claim that the

defendants conspired to discriminate against a plaintiff because of his political and

philosophical opposition to, and his outspoken criticism of, the defendants does not

constitute a cognizable § 1985 claim.  *Fotopolous v. Bd. of First Comm'rs of the*

*Hicksville Fire Dist.*, 11 F. Supp.3d 348, 369 (E.D.N.Y. 2014) (citing *Gleason v.*

*McBride*, 869 F.2d 688, 695 (2d Cir. 1989)).  Here, Lilly has not alleged any facts

suggesting either a conspiracy to violate his civil rights or any actionable discriminatory

animus that might have motivated the defendants' conduct. For either and both of these reasons, Lilly has not stated a claim under § 1985. For these reasons and those in the R&R, and because the parties did not object to this recommendation, this Court accepts Judge Schroeder's recommendation and dismisses Lilly's other claims under § 1985.

## IV.    INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Judge Schroeder recommended that Lilly's fifth cause of action—a common law claim for intentional infliction for emotional distress—be dismissed with prejudice because it is barred by the statute of limitations. Docket Item 19 at 6. The parties did not object to this recommendation. The statute of limitations for intentional infliction of emotional distress is one year. *See Gardner v. St. Bonaventure Univ.*, 171 F. Supp.2d 118, 128 (W.D.N.Y. 2001). Lilly alleges no claim against any defendant for conduct that occurred within one year of the filing of his complaint on March 23, 2016. Indeed, the most recent conduct alleged by Lilly occurred on August 22, 2014. Docket Item 1 at 5. Therefore, and because the parties did not object to this recommendation, this Court accepts Judge Schroeder's recommendation and dismisses Lilly's fifth cause of action for intentional infliction of emotional distress.

## CONCLUSION

This Court has carefully reviewed the thorough R&R, the record in this case, the objection and response, and the pleadings and materials submitted by the parties. Based on that review, the Court accepts and adopts all Judge Schroeder's recommendations. The defendants' motion for judgment on the pleadings is GRANTED

14

on all claims except the First Amendment retaliation claim against Officer Hall, and the

plaintiff's claim for punitive damages may proceed against Officer Hall as well.

    The case is referred back to Judge Schroeder for further proceedings consistent

with the referral order of October 20, 2016, Docket Item 15.

    SO ORDERED.


Dated:       January 22, 2019
            Buffalo, New York


                    *s/ Lawrence J. Vilardo*
                    LAWRENCE J. VILARDO
                    UNITED STATES DISTRICT JUDGE